FILED - GR
September 25, 2009 2:44 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: __LEP___/_____

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MICHELLE GULLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HUNTINGTON BANCSHARES INCORPORATED, HUNTINGTON NATIONAL BANK,<br><br>Defendants. | **1:09-cv-880**<br>**Janet T. Neff**<br>CASE NO.  **U.S. District Judge**<br><br>JUDGE<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Stephen P. Willison (P53735)
WILLISON + HELLMAN, P.C.
Attorneys for Plaintiff
44 Grandville Avenue, SW, Suite 200
Grand Rapids, MI 49503
(616) 855-0050

Plaintiff Michelle Gulley ("Plaintiff"), on behalf of herself and all others similarly situated (i.e., the members of the various Plaintiff Class described and defined, infra), herein allege as follows:

### INTRODUCTION AND SUMMARY OF ACTION

1. This is a civil action primarily seeking from Defendants Huntington National Bank and Huntington Bancshares Incorporated (together referred hereinafter as "Huntington," "Defendants" or "Defendant Huntington") restitution and disgorgement of all profits gained as a result of wrongfully taking overdraft fees from Huntington customers' checking accounts after debit card transactions and ATM withdrawals when customers had sufficient funds in their checking accounts to cover these transactions at the time they were made. Plaintiff also seeks

remedies for Defendants' failure to adequately notify customers of this practice. Finally, Plaintiff seeks to enjoin Defendants from continuing to conduct such improper activities. Plaintiffs, for themselves and all others similarly situated, brings this action pursuant to the Michigan Consumer Protection Act, Michigan Statute § 445.901, *et seq.*, as well as Michigan common law fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment/restitution/disgorgement.

## THE PARTIES

2. Plaintiff MICHELLE GULLEY is and has been a resident of Kent County in the State of Michigan during all times relevant to this action. She entered into a contractual relationship with Huntington for a checking account and debit card, and has been damaged as set forth in this Complaint by Huntington's practices.

3. Defendant Huntington Bancshares Incorporated is the parent of all Huntington entities. Huntington Bancshares Incorporated is a diversified financial services company providing banking, insurance, investments, mortgage banking and consumer finance to individuals, businesses and institutions in many states. Huntington Bancshares Incorporated is headquartered in Columbus, Ohio.

4. Defendant Huntington National Bank is the consumer banking subsidiary of Huntington Bancshares Incorporated and conducts substantial business in many states. Huntington National Bank is headquartered in Columbus, Ohio.

5. Based on information and belief, some of the decisions relating to developing, marketing and implementing the actions complained herein originated from Huntington National Bank's headquarters in Columbus, Ohio.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. The amount-in-controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and there is minimal diversity because certain members of the class are citizens of a different state than any defendant as required by 28 U.S.C., section 1332(d)(2).

7.     Venue as to Defendant is proper in this judicial district because Defendants Huntington Bancshares Incorporated and Huntington National Bank do substantial business in this judicial district and some of the acts complained of occurred in this judicial district (the collective Defendants will be referred to as "Defendants" or "Huntington").

## FACTUAL BACKGROUND

8.     Huntington is one of this country's larger consumer banking companies servicing individual and business customers in a number of states. One of the services provided by Huntington for customers who open a checking account is a check/debit/ATM card. This card allows customers to access their checking account funds by using the card to conduct transactions. Whether it is transactions with vendors or using the card to withdraw cash from an ATM machine, the card is processed electronically so that Huntington is aware of the use of the card and has the option to accept or decline transactions at the point of sale.

9.     During the days leading up to and including April 13, 2009, Plaintiff engaged in numerous debit card transactions – all of which occurred while she had a positive account balance. Including all checks and deposits that were posted on April 13, Plaintiff continued to have a balance well over zero. Nevertheless, Plaintiff was assessed four expensive overdraft fees of $37.50 each on April 13. Had Plaintiff not been improperly assessed these four overdraft fees, her account would have remained in positive balance at the end of April 14. Nevertheless, she

3

was again assessed five overdraft fees, totaling $225 worth of fees. She did not make any withdrawals or debit card transactions and did not have any checks posted on April 15, yet she was assessed two more overdraft fees, totaling $75.

10. Based on information and belief, Huntington includes pending charges on any given day as being debits which are counted as overdraft transactions, even though there were sufficient funds in the account to cover each of those transactions, and also re-orders transactions from chronological order to an order of highest transactions to lowest, in order to maximize the number of overdraft transactions. As this improper practice makes it impossible for customers to determine when they will be assessed an overdraft fee when their account balances are sufficient to cover the transactions, customers are unknowingly incurring more and more overdraft fees. In addition, as each overdraft fee is enormous, incurring one or more unwarranted overdraft fees pushes customers into further negative account balances, which results in even more multiple overdraft fees.

11. As a result, Huntington assessed Plaintiff at least eleven (11) overdraft fees of $37.50 each, totaling $412.50 over a mere three-day period, which were more than Plaintiff should have been assessed based on the fact that she had sufficient funds in his account at the time she made most of these transactions, and as a result of Huntington's practice of approving debit card transactions that result in overdrafting from the account and then assessing multiple overdraft fees, and artificially manipulating and re-ordering transactions from the order they occurred to highest transactions to lowest for the purpose of assessing additional overdraft fees.

12. Based on information and belief, the insufficient funds charges incurred by Plaintiff are representative of hundreds of millions of dollars of insufficient overdraft fees that Huntington assessed its customers and automatically deducted form their checking accounts

4

when there were sufficient funds in their accounts at the time of the transaction. This is an especially egregious wrongful taking of customers' money form their checking accounts because Huntington specifically approved each of these transactions and knew at the time it approved the transaction there was sufficient funds in the account to cover the transaction.

13. Finally, Huntington has failed to provide notice and make customers aware that they can incur insufficient funds overdraft fees on transactions that when made, there were sufficient funds in the account to cover the transaction.

14. All jurisdictional prerequisites have been and/or are hereby satisfied prior to, as well as by and through, the filing and service of this Complaint.

## CLASS ACTION ALLEGATIONS

15. Plaintiff initially proposes a nationwide class – the "National Class" – in litigating this case, as defined as follows:

> All Huntington customers who maintained a checking account with a branch office throughout the United States who from September 25, 2003 to the present who were assessed an insufficient funds overdraft fee for a Huntington check card purchase, debit card purchase, or ATM transaction which there was sufficient funds in the checking account at the time of the transaction to cover the amount of the transaction.

Excluded from the above class is any entity in which Defendants have a controlling interest, and officers or director of Defendants.

16. If the Court determines that a nationwide class is not warranted, Plaintiff requests, in the alternative, the certification of a Michigan class consisting of Huntington customers who maintain a checking account with a branch office in Michigan.

17. This action is brought as a class action and may properly be so maintained pursuant to the provisions of the Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff

reserves the right to modify the class definitions and the class period based on the results of discovery.

18. **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that there are at least hundreds of thousands of customers in the class. Since the class members may be identified through business records regularly maintained by Defendants and their employees and agents, and through the media, the number and identities of class members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail and supplemented by published notice, if necessary;

19. **Existence and Predominance of Common Question of Fact and Law** – There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

   a.  Whether Defendant Huntington assessed insufficient overdraft fees for transactions it approved and for which there were sufficient funds in the account at the time of the transaction to cover the cost of the transaction.

   b.  Whether Defendant Huntington posted account balances that do not reflect their actual balance, thereby inducing the customers who rely on the inaccurate statement of account balance into overdrafting from their account and resulting in being assessed overdraft fees.

   c.  Whether Defendant Huntington delayed the posting of transactions made by customers using Huntington's debit card, check card or ATM card so

6

that customers are charged overdraft fees on transactions where there were sufficient funds in the account when the transactions were entered into.

d. Whether Defendant Huntington re-ordered daily the posting of transactions from largest transactions to smallest, thereby increasing the number of overdraft fees customers are assessed.

e. Whether Defendant Huntington had a policy of approving transactions when it knew that they would result in overdrafting from the customers' account, in order to assess multiple overdraft fees.

f. Whether Defendant Huntington enrolled its customers in an automated overdraft program in order to increase the amount of overdraft fees assessed.

g. Whether Defendant Huntington charged an exorbitant overdraft fee amount that bears no relationship to the actual cost and risk to Huntington of paying an NSF item that it had already approved.

h. Whether Defendant Huntington failed to disclose to customers each of the above practices.

i. Whether Defendant Huntington misled customers regarding that it assessed insufficient overdraft fees for transactions it approved, and for which there were sufficient funds in the account at the time of the transaction to cover the cost of the transaction.

j. Whether Defendant Huntington engaged in deceptive advertising campaigns which create consumer expectations that are inconsistent with each of the above practices.

   k. Whether Defendant Huntington breached the implied covenant of good faith and fair dealing with regards to these practices.

   l. Whether Defendant Huntington's conduct as described above constitutes violations of the causes of action set forth below.

  20. **Typicality** – The claims of the representative Plaintiff are typical of the claims of the members of the Class. Plaintiff, like all other members of the Class, has sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiff and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct engaged in by Defendant.

  21. **Adequacy** – The representative Plaintiff will fairly and adequately represent and protect the interests of the Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

  22. **Predominance and Superiority** – This suit may be maintained as a class action under Federal Rules of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over the questions affecting only individual members of the Class and a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if class members themselves

could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

23. The Class Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendants' own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the Class Plaintiff would contemplate the use of additional media and/or mailings.

24. In addition to meeting the statutory prerequisites to a Class Action, this action is properly maintained as a Class Action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a. Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

        i. Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

   ii. Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests;

 b. The parties opposing the Class have acted or refused to act on grounds generally applicable to each member of the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole; or

 c. Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a Class Action is superior to other available methods of the fair and efficient adjudication of the controversy, including consideration of:

   i. The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

   ii. The extent and nature of any litigation concerning controversy already commenced by or against members of the Class;

   iii. The desirability or undesirability of concentrating the litigation of the claims in the particular forum;

   iv. The difficulties likely to be encountered in the management of a Class Action.

### FIRST CAUSE OF ACTION
### Violation of Michigan Consumer Protection Act, Michigan Statute § 445.901 *et seq.*
### (Against all Defendants)

25. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

26. Defendants' acts and practices as described herein constitute unlawful, unfair, unconscionable, and deceptive methods, acts, and practices. Defendants' unlawful, unfair and fraudulent business acts and practices are described throughout this Complaint and include, but are not limited to, wrongfully directly taking insufficient overdraft fees from customers' checking accounts for transactions where there was sufficient funds in the account at the time of the transaction to cover the transaction; improperly re-ordering the posting of transactions to highest transactions to lowest in order to generate more overdraft fees; and misrepresenting and falsely advertising the accuracy and reliability of the available balance or account balance in publications of customers' checking account information.

27. Plaintiff and the Class members, and each of them, have been damaged by said practices.

28. The conduct of Defendants as described herein violates the Michigan Consumer Protection Act, Michigan Statute § 445.901, *et seq.*

29. Pursuant to Michigan Statute § 445.911, Plaintiff, on behalf of herself and all others similarly situated, seeks relief as prayed for below, including injunctive relief and actual damages.

## SECOND CAUSE OF ACTION
### Fraud
### (Against all Defendants)

30. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

31. The misrepresentations, nondisclosure and/or concealment of material facts made by Defendants to Plaintiff and the members of the Class, as set forth above, were known by Defendants to be false and material and were intended by the Defendants to mislead Plaintiff and the members of the Class. Defendants also concealed material information regarding the practices complained of which were not known to Plaintiff and the members of the Class.

32. That the Plaintiff and the Class were actually misled and deceived and were induced by Huntington to incur overdraft charges they otherwise would not have incurred.

33. As a result of the conduct of Defendants, Plaintiff and the Class members have been damaged by having incurred unwarranted overdraft fees assessed and taken from their checking account.

## THIRD CAUSE OF ACTION
### Negligent Misrepresentation
### (Against all Defendants)

34. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

35. That Defendants had a duty to provide honest and accurate information to its customers to avoid those customers from incurring expensive and unnecessary overdraft charges.

36. Defendants specifically and expressly indicated to class members that Huntington customers' checking account balance information that are published online, by phone, by ATM

machines, and in-store inquiries are accurate and reliable, when in fact they are inaccurate and unreliable.

37. Such misrepresentations were and are made by Huntington through the use of the identifying term "account balance" in the various methods in which customers may access their checking account information, when in fact such information is not what it purport to be, and through the various marketing materials and the customer agreement contracts.

38. Defendants knew or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendants' products would understand Defendants' representations concerning the term "account balance" as being what they purport to be – the actual available balance at the time of the inquiry. Defendants also knew or in the exercise of reasonable diligence should have known, that the ordinary consumer and customer of Defendants' products would understand the marketing materials and the terms of the customers agreement contracts set forth in this Complaint as indicating that the published "account balance" is accurate and reliable. Any other understanding on the part of consumers would not be reasonable given Defendants' representations.

39. Plaintiff and the Class members justifiably relied on Defendants' misrepresentation as to their available balance and engaged in debit transactions or ATM withdrawals which were within the limits of their published "balance," yet were assessed overdraft fees.

40. As a result of the conduct of Defendants, Plaintiff and the Class Members have been damaged by having relied on Defendants' misrepresentations as to their available balance and have incurred unwarranted overdraft fees.

41. In addition, by representing and posting pending charges to online accounts in real time, and then including those charges to provide available balance, Huntington represented to Class Members that overdraft fees would not be charged for transactions that were less than the balance in the account at the time the transaction took place.

42. Those representations were false as Defendants did assess and automatically deduct overdraft fees from customers account even though there were funds available to cover the transaction at the time of the transaction.

43. Defendants knew or in the exercise of reasonable diligence should have known, that Plaintiff and ordinary customers would rely on those representations.

44. That Plaintiff and the Class members did reasonably rely on those representations.

45. As a result, Plaintiff and the Class members have been damaged by being assessed expensive and unnecessary overdraft fees.

### FOURTH CAUSE OF ACTION
### Breach of Contract
### (Against all Defendants)

46. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

47. Plaintiff and the Class members had a contract with Defendants that was embodied by the account agreement documents. Under the agreement documents, Defendants were not authorized to engage in the practices complained of throughout this complaint. By engaging in such practices, Defendants have breached their contract with plaintiff and the Class members.

48. As a result, Plaintiff and the Class members have been damaged by being assessed expensive and unnecessary overdraft fees.

## FIFTH CAUSE OF ACTION
## Breach of Implied Covenant of Good Faith and Fair Dealing
## (Against all Defendants)

49. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

50. Michigan law implies a covenant of good faith and fair dealing in all contracts between parties.

51. As a result of the actions of Defendants, set forth hereinabove, Defendants have violated the implied covenant of good faith and fair dealing contained in the agreements which purport to govern Plaintiff's and the Class members' checking accounts, and as a result thereof, Plaintiff and the Class members are entitled to damages as prayed.

## SIXTH CAUSE OF ACTION
## Unjust Enrichment/Restitution/Disgorgement
## (Against all Defendants)

52. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein.

53. Plaintiff and the Class members conferred a benefit upon Defendants, namely, entering into contracts for checking and debit card accounts and paid money for services related to the accounts and use of debit cards, including overdraft fees.

54. Defendants retained that benefit.

55. Defendants, however, retained that benefit under circumstances, discussed throughout this complaint, that make it inequitable for Defendants to retain it without paying the value thereof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for relief as follows:

A. For an order certifying the National Class, and appointing Plaintiff and her counsel to represent the Class;

B. Alternatively, if the Court does not grant certification of the National Class, Plaintiff prays for an order certifying a Michigan Class, and appointing Plaintiff and her counsel to represent the class;

C. For an order awarding Plaintiff and the Class restitution and/or disgorgement and other equitable relief as the Court deems proper;

D. For an order awarding Plaintiff and the Class punitive damages as to the appropriate cause of action;

E. For an order enjoining Defendants, under Michigan Statute § 445.911, from continuing to engage in business acts and practices, or any of them, which are unlawful, unfair, or fraudulent, as alleged herein; and

F. For an order mandating that Defendants engage in a corrective advertising campaign to correct the misperceptions Defendants' conduct created;

G. For an order awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' and expert-witness fees and other costs pursuant to as may be applicable; and

H. For an order awarding such other and further relief as this Court may deem just and proper.

Respectfully submitted,

WILLISON + HELLMAN, P.C.

Dated: *September 25, 2009*

Stephen P. Willison (P53735)
Attorneys for Plaintiff
44 Grandville Avenue, SW
Suite 200
Grand Rapids, MI  49503
(616) 855-0050

## DEMAND FOR JURY TRIAL

Plaintiff, and all others similarly situated, hereby demands a trial by jury herein.

Respectfully submitted,

WILLISON + HELLMAN, P.C.

Dated: *September 25, 2009*

Stephen P. Willison (P53735)
Attorneys for Plaintiff
44 Grandville Avenue, SW
Suite 200
Grand Rapids, MI  49503
(616) 855-0050